# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

JOHN PAUL DEHART, JR.        :     DOCKET NO. 09 CV 0626

VS.                     :     JUDGE DOHERTY

BP AMERICA, INC., ET AL.     :     MAGISTRATE JUDGE HILL

## <u>MEMORANDUM RULING</u>

Pending before the undersigned is the plaintiff's Motion to Remand this suit to the Civil District Court for the Parish of Orleans. [rec. doc. 15]. The defendants have filed Opposition, to which plaintiff filed a Reply. [rec. docs. 66 and 67]. Oral argument was heard on July 23, 2009. For the following reasons, the Motion to Remand is **DENIED**.

## BACKGROUND

Plaintiff, John Paul DeHart, Jr., filed this purported class action lawsuit, on January 23, 2009, in the Civil District Court for the Parish of Orleans on behalf of himself and allegedly similarly situated people, claiming personal injury as a result of exposure to airborne radiation dust/t-norms, between February 15, 2007 and April 30, 2007, while engaged in a platform decommissioning project. The platform was located at South Timbalier Block 160, located on the Outer Continental Shelf, offshore Louisiana. The platform was a fixed platform, permanently attached to the seabed, erected for the purpose of oil and gas exploration, production and development.

A time-chartered liftboat, the L/B DIXIE PATRIOT, which was supporting the platform decommissioning, was jacked-up adjacent to the platform.  Plaintiff and other workers engaged in the decommissioning ate meals and slept aboard the L/B DIXIE PATRIOT while the work was being performed on the platform to decommission it. There were also two supply boats assisting in the operation.

Plaintiff, a Louisiana domiciliary[1], asserts a class action, and expressly identifies causes of action for negligence of the defendants "under the Jones Act, general maritime law, the applicable Louisiana law and alternatively, for negligence under 33 U.S.C. § 905(b)"[2], unseaworthiness of the L/B DIXIE/PATRIOT, and for maintenance and cure. [rec. doc. 1-1, ¶ 8-12].  Plaintiff names BP America Production Company (BP), an alleged foreign corporation, Production Management Industries (PMI), LLC, Crown Oilfield Services, Inc. (Crown), Brand Scaffold Builders, LLC (Brand), an alleged foreign corporation, Cenergy Corporation of Delaware, an alleged foreign corporation, Power Marine, LLC (Power), El Mar Consulting, LLC (El Mar) and Eagle Consulting, LLC (Eagle) as defendants. [*Id*. at ¶ 2].

In paragraph 4 of his original state court Petition for Damages, plaintiff alleges that he was "a rigger hired by Crown . . . assigned as a seaman and a member of the crew of the L/B DIXIE PATRIOT." He further alleges in paragraph 5 that "BP was a Jones Act

---

[1]rec. doc. 1-1 at Preamble.

[2]*Id*. at ¶ 10.

employer of petitioner . . . and was also the charterer, and/or controller of the L/B Dixie

Patriot, of the two supply vessels and the work areas whereupon petitioner . . . sustained

injury" and that "Crown, his paycheck employer, was also his Jones Act employer."

    With respect to his claim under the Jones Act, plaintiff alleges seaman status in

paragraph 7 as follows:

> From the date of his employment throughout his service as a seaman on the
> L/B DIXIE PATRIOT, petitioner was employed by Crown in the service of
> BP, whose offshore properties were being decommissioned by the use of
> the L/B DIXIE PATRIOT.  While offshore and involved in the business of
> BP, Crown, and of the vessel engaged in offshore marine construction, he
> lived and worked on the L/B DIXIE PATRIOT.  At the time of the accident
> and exposure set forth hereinabove, petitioner was working offshore and
> living on the L/B DIXIE PATRIOT to which he was assigned for the
> duration of the decommissioning of the BP platform.  Accordingly,
> petitioner, in his capacity as a construction worker assigned to the L/B
> DIXIE PATRIOT, was a seaman and a member of the crew of L/B DIXIE
> PATRIOT to which he was assigned in order to assist in the performance of
> the offshore maritime construction work performed for and by BP by the
> other named defendants. Further, petitioner's then and prior employment in
> the service of BP was on a fleet of vessels under the common control of BP
> and was substantial in nature and duration.

    Further, in paragraph 5 of the Petition, with respect to control and supervision of

the work being performed, plaintiff alleges that "all named defendants had representatives

present or should have been present, who were assisting and/or should have been assisting

in controlling the work and work environment where petitioner and the other members of

the class suffered injury or who  notified them of the hazards involved with the handling

of material contaminated with radiation." Moreover, in paragraph 8, plaintiff alleges that

the L/B/ DIXIE PATRIOT was "owned and operated by Power but chartered and

supervised by BP and on which PMI performed radiation services . . . ."

Contrary to the allegations contained in his petition, in his deposition, DeHart testified that while employed as a rigger for Crown, between December 2005 and December 2007, he worked for at least eleven different companies including BP, Burlington, Meritec, Petrohawk, Nexen, NCX, Stone Energy, Arena, Mariner Energy and Newfield.  He further testified that all of this offshore work was performed on fixed platforms, not on any vessels.  Indeed, he testified that the he never even worked alongside a liftboat before the BP project at issue in this case and that the sole liftboat upon which he slept was the L/B DIXIE PATRIOT. Finally, he confirmed that his sole connection to any vessel was as a passenger on supply boats which transported him from platform to platform.

Likewise, with respect to the BP project at issue in this case, DeHart testified that 99% of the  decommissioning work that he performed was performed while DeHart was physically on the platform, and not while he was on the L/B DIXIE PATRIOT.  He further specifically testified that he was not involved in cutting anything while on the L/B DIXIE PATRIOT as has been suggested by counsel.  Indeed, DeHart admitted that his use of the L/B DIXIE PATRIOT was limited to eating meals and sleeping aboard.

This testimony is consistent with the affidavit testimony of Chet Lambert, Health Safety & Environmental Coordinator for Crown.  Lambert confirmed that DeHart's work for Crown as a rigger in February, March and April of 2007 was performed onshore in

Crown's shop, and offshore on fixed platforms for various customers, not on any vessels.

Indeed, during the entirety of his employment with Crown, 99% of the work DeHart

performed was while he was on land at Crown's shop, and offshore on fixed platforms for

various customers, not on any vessels.  Moreover, Lambert agreed with DeHart's

testimony that 99% of DeHart's work for BP on the South Timbalier project was

performed while DeHart was physically on the platform, not while DeHart was on the

L/B DIXIE PATRIOT or on any other supply boat or vessel.

> The proposed class is defined as:
>
> [A]ll persons working on the L/B DIXIE PATRIOT or supply boats
> working in conjunction with the L/B DIXIE PATRIOT to dismantle the BP
> Platform during the period from approximately February 15, 2007 to at least
> April 30, 2007 and who were exposed to airborne radiation dust/t-norms.
>
> The proposed Class is further subdivided as follows:
>
> a. Jones Act Seamen working on the L/B DIXIE PATRIOT or the supply
> boats working in conjunction with the L/B DIXIE PATRIOT on the project
> to dismantle the BP Platform; [and]
>
> b. Maritime workers working on the project to dismantle the BP Platform.

[*Id*. at ¶ 3].

With respect to the propriety of permitting this case to proceed as a class action,

plaintiff alleges that the class is so numerous that joinder of all members is impracticable,

and that while plaintiff does not know the exact number of class members, he believes the

number of members is "no more than one hundred and thirty members, including

employees of Power, the vessel operator, owner's representatives and supervisors, and

employees, *inter alia*, of Crown, PMI, Brand, Cenergy, Power, El Mar and Eagle, as well as members of the crew of the two supply boats." [*Id.* at ¶ 16].

With respect to his claims, which plaintiff alleges are typical of the claims of the class as a whole, plaintiff alleges that he became seriously ill, and afflicted with serious and permanent neurological, psychological, and pathological conditions, as a result of the movement, improper storage, cutting and removal of radioactive liquids, flow lines and other contaminated equipment on, and from, the deck of the L/B DIXIE PATRIOT and adjacent work areas. [*Id.* at  ¶ 6 and 18].

 Plaintiff further alleges that he and each of the purported class  members "have sustained physical, mental and/or emotional injuries, fright, inconvenience, and other injuries associated with the exposure to airborne radiation dust/t-norms, in special damages in the particulars set forth hereinafter, and in general damages in an amount deemed just in the premises, all plus interest from judicial demand until paid and all costs . . . ." [*Id.* at ¶ 1].  Plaintiff also alleges that he and each other purported class member "suffered a significant exposure to proven hazardous substances" and that as a result each have "a significantly increased risk of contracting a serious latent disease or diseases . . ." requiring medical monitoring. [*Id.* at ¶ 6].

Damages sought include those for past, present and future physical and mental pain and suffering, past present and future medical expenses including rehabilitation costs, doctor, hospital and pharmaceutical bills, costs for laboratory and physical

examinations and  diagnostic studies, past present and future loss of wages and fringe benefits, permanent disability and the cost of medical monitoring. [*Id*. at ¶ 13].

On February 20, 2009, the defendants removed this action to the United States District Court for the Eastern District of Louisiana, alleging jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq*., and/or the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The defendants further alleged that plaintiff had failed to state any claim for relief or right of recovery under the Jones Act, unseaworthiness under the general maritime law or for maintenance and cure because plaintiff fails to qualify as a seaman, and that these causes of action are a "mere sham and pretext for the fraudulent purpose of preventing removal." [rec. doc. 1, ¶ 7 and 8].  On April 16, 2009, this case was transferred to this Court. [rec. docs. 26 and 27].

While still pending before the Eastern District, on March 12, 2009, plaintiff filed the instant Motion to Remand.  Plaintiff asserts that this suit was improperly removed because plaintiff, DeHart, is a Jones Act seaman, whose Jones Act action is non-removable  under 28 U.S.C. § 1445(a), because there is no OCSLA jurisdiction and because there is no jurisdiction under CAFA.  Plaintiff additionally seeks attorney's fees and costs for improper removal pursuant to 28 U.S.C. § 1447(c) and Rule 11, FRCP.[3] [rec. doc. 15].

---

[3]The Motion was supported by the unsigned declaration of plaintiff, John Paul DeHart, Jr. Plaintiff's subsequent Motion for Leave to Substitute the signed declaration was withdrawn by counsel. [*See* rec. docs. 55 and 59].

The defendants opposed remand on several grounds, including, that by reason of his sworn deposition testimony, DeHart is not a Jones Act seaman, and that it is facially apparent from plaintiff's state court Petition that jurisdiction under CAFA exists and plaintiff has failed to carry his burden establishing that any exception to CAFA applies to divest this court of jurisdiction.

With respect to seaman status, in his Reply memorandum, plaintiff argues that although his paycheck employer, Crown, did not own operate any liftboats, it utilized "an amphibious flotilla". . .  "to ply its trade of maritime construction", presumably including BP-chartered liftboats such as the L/B DIXIE PATRIOT.  During oral argument, plaintiff's counsel acknowledged that BP did not control the navigation of the liftboat (the L/B DIXIE PATRIOT).

## LAW AND ANALYSIS

**Standard on Removal of alleged fraudulently pleaded Jones Act Claims**

As a general rule, Jones Act cases are not removable. *Preston v. Grant Advertising, Inc.*, 375 F.2d 439 (5th Cir.1967); *Johnson v. ODECO Oil & Gas Company*, 864 F.2d 40, 42 (5th Cir.1989); 28 U.S.C. § 1445(a).  However, the Fifth Circuit has recognized that in certain circumstances "defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175-176 (5th Cir. 1995) *citing Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir.1993). Thus, while the Fifth Circuit  has cautioned against

8

pre-trying a case to determine removal jurisdiction, the Fifth Circuit nevertheless has recognized the district court's authority to use a summary judgment-like procedure to determine whether a plaintiff has fraudulently pleaded a Jones Act claim.  *Id.* at 176.

The burden of persuasion on a removing party in such a case is a heavy one: "The removing party must show that there is no possibility that plaintiff would be able to establish a cause of action." *Id*. at 176.  Accordingly, "in determining whether a plaintiff's claims are baseless, the district court must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff."  *Id*. (citations omitted).  A denial of remand is permissible where the district court "determine[s] that as a matter of law there was no reasonable basis for predicting that the plaintiff might establish liability." *Id.*

From the record before this court, for the reasons set forth below, the undersigned finds that, as a matter of law, there is no possibility that plaintiff, John Paul DeHart, Jr., can be found to be Jones Act seaman.  Therefore, remand on this basis must be denied.

**Seaman Status**

To determine if an individual worker is a seaman, and therefore entitled to the protections of the Jones Act, the Supreme Court has established a two-prong test. First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Becker v. Tidewater, Inc.,* 335 F.3d 376, 387 (5th Cir. 2003) *quoting  Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d

314 (1995). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." *Id*. The Supreme Court has emphasized that the "substantial connection" test is conjunctive and therefore the purported seaman must have a connection to a vessel or fleet of vessels that is substantial in both duration (the temporal prong) and nature (the functional prong). *Roberts v. Cardinal Servs. Inc*., 266 F.3d 368, 374 (5th Cir.2001) *citing Chandris*, 515 U.S. at 371.

In this case, DeHart alleges in his Petition that he was assigned to the L/B DIXIE PATRIOT as a seaman, in order to assist in the performance of the offshore maritime construction work performed for and by BP. Assuming without deciding that the L/B DIXIE PATRIOT is a vessel in navigation, the question is thus whether plaintiff's connection to the L/B DIXIE PATRIOT is substantial in both duration and nature, thereby providing coverage under the Jones Act.

With respect to the nature of the work necessary to satisfy the "substantial connection" requirement for crew-member status, the Fifth Circuit has found that either permanent assignment to a vessel, or the performance of a substantial portion of the employee's work performed on the vessel, is sufficient. *Barrett v. Chevron, USA, Inc*., 781 F.2d 1067, 1073-1074 (5th Cir. 1986). The latter requires a showing that "[the claimant] performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity." *Id*. at 1074.

10

The Fifth Circuit has quantified the duration of time necessary to satisfy the "substantial connection" requirement by using a 30 percent rule of thumb.  "[A]s a general rule, [a worker] must show [substantial duration] by demonstrating that 30 percent or more of his time is spent in service of that vessel." *Roberts*, 266 F.3d at 375. The Supreme Court endorsed this thirty-percent rule in *Chandris* noting that a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."  *Chandris*, 515 U.S. at 371.  *See also Nunez v. B&B Dredging, Inc.*, 288 F.3d 271, 277 (5th Cir.2002) (reaffirming the 30-percent rule, holding that because the plaintiff spent only approximately 10 percent of his work time aboard a vessel in navigation, he did not qualify for seaman status as a matter of law).

Initially, the undersigned notes that it is undisputed that the L/B DIXIE PATRIOT was not owned or operated by either of DeHart's alleged Jones Act employers, Crown or BP. Furthermore, it is clear from DeHart's deposition testimony and the affidavit of Chet Lambert, that DeHart did not perform 30% of his work during the BP South Timbalier project on the L/B DIXIE PATRIOT.  To the contrary, DeHart candidly admitted that 99% of his work on this project was performed while he was physically on the platform, not while he was on the L/B DIXIE PATRIOT, and that his sole connection to the L/B DIXIE PATRIOT was for the purpose of eating meals and sleeping.

11

While counsel asserted that the declaration of Larry Meyers (submitted in connection with his related case but not submitted in connection with the instant Motion) demonstrates the contrary, counsel acknowledged during oral argument that Meyers' declaration fails to say anything about the work performed by DeHart.  Based on the record before this court, it is therefore clear that there is no possibility that plaintiff, John Paul DeHart, Jr., may be deemed a Jones Act seaman as a result of his alleged connection to the L/B DIXIE PATRIOT.  He lacks the "permanent-attachment" aspect necessary for crew member status.  *See Barrett*, 781 F.2d at 1074.

DeHart also alleges in his Petition that his "then and prior employment in the service of BP was on a fleet of vessels under the common control of BP and was substantial in nature and duration." However, DeHart's above cited deposition testimony and the testimony of Chet Lambert belie this allegation.  Furthermore, DeHart admitted that while employed as a rigger for Crown, he worked for at least eleven different companies, only one of which was BP.  He further candidly admitted that all of his offshore work was performed on platforms, not vessels.  This testimony is confirmed by the affidavit testimony of Lambert who testified that DeHart's work for Crown was performed on land in Crown's shop and offshore, for various customers, on fixed platforms.  In accordance with the reasoning of *St. Romain v. Industrial Fabrication and Repair Service, Inc.*, 203 F.3d 376 (5th Cir. 2000), DeHart's service on projects for eleven different companies, on different platforms and support vessels, does not qualify as

service on a fleet of vessels subject to common control and ownership.

To avoid this result, plaintiff's counsel argues that the Crown time sheets provided in discovery reveal that 26.84% of DeHart's total employment with Crown was on BP projects, and, presumably, on vessels under the common control and ownership of BP. However, there is no competent evidence before this court demonstrating that DeHart spent this time performing work on any vessel, much less any fleet of vessels, owned, operated, controlled or charted by BP, as opposed to merely performing work on a fixed platform.  Furthermore, even if there was competent evidence that DeHart worked on an identifiable fleet of BP controlled vessels, as plaintiff's counsel contends, the 30% rule "does not change when an 'identifiable group' of vessels in navigation is at issue . . . ." *Roberts*, 266 F.3d at 375.

While plaintiff's counsel suggested that more discovery might reveal additional work performed by DeHart for BP sufficient to reach the 30% threshold, given the lack of competent evidence that DeHart performed work on, or was assigned to duty on, any BP controlled vessel or fleet of vessels, and DeHart's testimony negating any such suggestion, the court is not persuaded by this argument.  Furthermore, discovery regarding remand issues has been ongoing since May, 2009 and plaintiff has therefore had more than sufficient time to discover favorable supporting evidence to present to this court.

Moreover, while there is a narrow exception to the 30% rule for those workers who are engaged in "classical seaman's work", DeHart does not fall within this exception as his work, as a rigger, cannot be classified as "classical seaman's work."  To the contrary, DeHart practices "an art developed in land work and transposed to a maritime setting" for which Jones Act coverage is unavailable.  *Roberts*, 266 F.3d at 377-378.

Finally, the court finds the cases cited by plaintiff in support of his position, *Jenkins v. Aries Marine Corp.*, 554 F.Supp.2d 635 (E.D. La. 2008)[4] and *Parker v. Jackup Boat Service, LLC*, 542 F.Supp.2d 481(E.D. La. 2008)[5], are factually distinguishable.  In both cases, there was no question that the alleged Jones Act seaman worked on vessels in navigable waters.  The sole issue presented in those cases was whether the plaintiff had spent at least 30% of his time working on vessels owned and operated by the same company.  Here, there is no competent evidence before this court that DeHart ever performed worked on, or was assigned to duty on, any vessel or fleet of vessels owned or operated by any particular company. DeHart's work was admittedly performed on land

---

[4] In *Jenkins*, the plaintiff could not demonstrate the requisite connection to the vessel (or the predecessor vessel owned by the same company) on which he was injured.  However, the record evidence established that Jenkins spent 87% of his total work time for his employer, Royal Eagle, while assigned to "vessels on navigable waters, while subject to the perils of sea", of which time, 61% was on "four vessels under common ownership or control of Tidewater Marine." Thus, although he was employed as a rigger, Jenkins was assigned to perform his work over 30% of the time on vessels in navigable waters.  The court rejected the defendant's argument that the plaintiff's employer had to be the owner of the group of vessels that makes up the 30% threshold.

[5] In *Parker*, the plaintiff, a steward, could not demonstrate the requisite connection to the vessel on which he was injured.  However, because the record evidence established that Parker worked approximately half of his time while employed by Trinity Catering, Inc., aboard two construction barges owned and operated by Cross Marine, he was deemed a seaman.  In so finding, the court noted that the plaintiff's employer need not be the owner of the group of vessels that makes up the 30% threshold

14

and on fixed platforms, which are not vessels for purposes of the Jones Act.  *See Becker*, 335 F.3d at 391 *citing Demette v. Falcon Drilling Co.*, 280 F.3d 492 (5th Cir.2002).

In sum, the undersigned finds that, as a matter of law, there is no possibility that plaintiff, John Paul DeHart,Jr., may be deemed a  Jones Act seaman.  He lacks the requisite connection to a vessel in navigation, or to an identifiable group of such vessels, that is substantial in terms of both duration and nature.  Therefore, remand on this basis must be denied.

**CAFA Jurisdiction**

Although removal is not barred under the Jones Act, this court must nevertheless possess jurisdiction over this action.  For the reasons which follow, the undersigned finds that this action was properly removed under this court's CAFA jurisdiction, codified at 28 U.S.C. § 1332(d).

Congress enacted CAFA to encourage federal jurisdiction over interstate class action lawsuits of national interest. *Preston v. Tenet Healthsystem Memorial Medical Center, Inc*., 485 F.3d 793, 797 (5th Cir. 2007) (*Preston I*).   CAFA contains a basic jurisdictional test which requires a removing defendant to prove minimal diversity and an aggregated amount in controversy of $5,000,000 or more.[6] *Id., citing* 28 U.S.C. § 1332(d). Minimal diversity is satisfied when one plaintiff is diverse from one defendant. *Exxon*

---

[6]CAFA abrogates the rule against aggregating claims to reach the jurisdictional minimum for federal court jurisdiction.  *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 571, 125 S.Ct. 2611, 2627-2628 (2005); 28 U.S.C. § 1332(d)(6).

*Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S.Ct. 2611, fn. 12 (2005). The putative class must also consist of at least 100 class members. 28 U.S.C. § 1332(d)(5)(B).[7]  Under CAFA, a single defendant may remove a class action that meets these three requirements, even over the objections of other defendants. *Jenkins v. BOH Bros. Const. Co., LLC,* 2009 WL 3346953 (E.D. La. 2009) *citing* 28 U.S.C. § 1453(b)[8].

The removing defendant's burden may be satisfied on the basis of the allegations in the plaintiff's Petition where it is "facially apparent" that CAFA jurisdiction exists. *See Frazier v. Pioneer Americas*, LLC, 455 F.3d 542, 545 (5th Cir. 2006) *citing Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (in discussing proof necessary to establish the amount in controversy for cases removed from Louisiana and Texas courts, whose rules prohibit claims for specific damage amounts, approving removal of cases where the amount in controversy is facially apparent); *Phillips v. Severn Trent Environmental Services, Inc.*, 2007 WL 2757131, *2 (E.D. La. 2007) (noting the size of the putative class, and the litany of categories of serious damages and the seriousness of the potential injuries alleged, the court held that the removing defendant met its burden to prove by a preponderance that the putative class members' claims exceeded $5,000,000);

---

[7]The undersigned notes that several district courts have held that the 100 member class provision is not a requirement of CAFA jurisdiction, but rather, is an exception to CAFA jurisdiction, which must be established by the party opposing removal, not the removing party. *See Garcia v. Boyar & Miller, PC*, 2007 WL 1556961, *4 (N.D. Tex. 2007) *citing Frazier*, 455 F.3d at 546; *Broquet v. Microsoft Corp.*, 2008 WL 2965074, *1 (S.D. Tex. 2008) *citing Frazier*, *supra*.  However, as is discussed below, it is clear in this case that the purported class consists of over 100 members, no matter who bears the burden of proof.

[8]28 U.S.C. 1453(b) provides that "A class action may be removed to a district court of the United States in accordance with section 1446 . . . without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."

16

*Robinson v. Cheetah Transportation*, 2006 WL 468820, *2 (W.D. La. 2006) (finding from the allegations in the state court Petition that all requirements for exercise of CAFA jurisdiction were satisfied). *See also Simon v. WalMart Stores*, 193 F.3d 848, 850 (5th Cir. 1999) *citing Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) (A removing defendant must prove the amount in controversy satisfies this court's jurisdictional minimum by either (1) demonstrating that it is facially apparent that the claims are likely above the jurisdictional minimum, or (2) setting forth the specific facts in controversy that support a finding of the jurisdictional amount).

The basis for federal jurisdiction under CAFA is established at the time of removal, and "subsequent events generally cannot 'oust' the federal court of jurisdiction." *See Braud v. Transp. Serv. Co.*, 445 F.3d 801, 808 (5th Cir. 2006); *Brinston v. Koppers Industries, Inc*., 538 F.Supp.2d 969, 975 (W.D. Tex. 2008). *See also Gebbia v. Wal-Mart Stores, Inc*., 233 F.3d 880, 883 (5th Cir. 2000) (jurisdictional facts that support removal must be judged at the time of the removal).

Here, it is facially apparent that CAFA jurisdiction exists over this purported class action lawsuit. Plaintiff DeHart, a Louisiana domiciliary, is undisputably diverse from defendants, BP, Brand and Cenergy, all of whom are alleged to be foreign corporations. Thus, minimal diversity is present.

DeHart further alleges in his Petition that the class could be as large as 130 members. While DeHart asserts that the defendants should be judicially estopped from

relying on the allegations set forth in plaintiff's Petition, given their allegedly contrary position taken in the *Myers* case, judicial estoppel does not apply in this separate suit. "The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996). There has been no contrary representation by the defendants in this case, nor has there been any earlier proceeding in this case. Furthermore, if the doctrine was applicable, the doctrine would likewise preclude plaintiff from arguing the opposite position, contrary to the position taken by plaintiff on behalf of the plaintiff's class in the *Myers* case.

Finally, during oral argument, plaintiff's counsel acknowledged that his class would consist of about 118 people, well over the 100 person threshold. Given that several district courts have held that the 100 member class provision (§ 1332(d)(5)(B)) is not a requirement of CAFA jurisdiction, but rather, is an exception to CAFA jurisdiction, which must be established by the party opposing removal, not the removing party, this concession terminates any controversy over the size of the putative class. *See Garcia v. Boyar & Miller, PC*, 2007 WL 1556961, *4 (N.D. Tex. 2007) *citing Frazier*, 455 F.3d at 546; *Broquet v. Microsoft Corp.*, 2008 WL 2965074, *1 (S.D. Tex. 2008) *citing Frazier*, *supra*.

Lastly, it is facially apparent that the amount in controversy exceeds $5,000,000.00 based on the nature of the damages sought and the size of the purported class. More

specifically, the Petition contains sufficient specificity and substance to support a finding that the jurisdictional amount is, more likely than not, satisfied.  DeHart's individual claim for damages resulting from alleged exposure to radiation, causing an alleged permanent neurological, psychological and pathological condition, appears substantial. Further, DeHart and the other class members seek damages for severe and possibly disabling physical, mental and emotional injuries associated with alleged exposure to airborne radiation exposure, including damages for diagnostic studies and future medical monitoring. Under the circumstances, the undersigned finds that, even a minimal award to each of the 118 potential plaintiffs acknowledged by plaintiff's counsel, and as suggested by the defendants, more likely than not satisfies this court's jurisdictional minimum in the aggregate.  *See Frazier,* 455 F.3d at 545 (finding the CAFA jurisdictional minimum facially apparent based on the nature of the alleged injuries and damages sought by class members).

**CAFA Exceptions**

The district court can decline CAFA jurisdiction under three provisions: (1) the "home state exception", § 1332(d)(4)(B); (2) the "local controversy" exception, § 1332(d)(4)(A); and (3) discretionary jurisdiction, § 1332(d)(3).  *Preston I*, 485 F.3d at 797.

The party moving to remand the class action to state court must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter

jurisdiction.  *Id*., *citing Serrano v. 180 Connect, Inc*., 478 F.3d 1018, 1024 (9th Cir.2007) and *Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir.2006).

In this case, DeHart contends that both the "local controversy" and "home state" exceptions are applicable.  For the reasons which follow, the undersigned finds that neither exception is applicable, and that this court, therefore, may not decline federal jurisdiction.

**Local Controversy Exception**

"Congress crafted CAFA to exclude only a narrow category of truly localized controversies. . . ."  *Preston v. Tenet Health Systems,* 485 F.3d 804, 812 (5th Cir. 2007) (*Preston II*).  Pursuant to the "local controversy" exception, the district court "shall decline to exercise jurisdiction" when the action meets the following four criteria: (1) more than  two-thirds of the members of the proposed plaintiff class are citizens of the State in which the action was originally filed (Louisiana); (2) the plaintiffs sued at least one defendant (a) from whom they seek significant relief, (b) whose conduct forms a significant basis for their claims, and (c) who is a citizen of the State in which the action was originally filed (Louisiana); (3) the principal injuries resulting from the alleged conduct, or any related conduct, of each defendant happened in the State in which the action was originally filed (Louisiana); and (4) during the past three years, no other class action has been filed against any of the defendants asserting the same or similar factual allegations, on behalf of the same or other persons. § 1332(d)(4)(A). All four elements

must be satisfied for the "local controversy" exception to apply. *Caruso v. Allstate Insurance Company*, 469 F.Supp.2d 364, 371 (E.D. La. 2007)

It has been recognized that the Legislative history indicates that any doubts as to the applicability of the local controversy exception should be "resolved 'in favor of exercising jurisdiction over the case.' " *Aburto v. Midland Credit Management, Inc.*, 2009 WL 2252518, *5 (N.D. Tex. 2009) *citing Escoe v. State Farm Fire and Cas. Co.*, 2007 WL 1207231, *2 (E.D. La. 2007) *quoting Evans*, 449 F.3d at 1163.

The defendants do not dispute the second element of the local controversy test, that there is a Louisiana citizen which is a "significant defendant." Indeed, five of the eight named defendants are allegedly Louisiana companies. Defendants, however, contend that plaintiff's proposed class action does not meet the first, third and fourth elements..

The party moving for remand must prove the statutory citizenship requirement by a preponderance of the evidence.[9] *Preston I*, 485 F.3d at 797 *citing Welsh v. Am. Surety Co. of N.Y.*, 186 F.2d 16, 17 (5th Cir. 1951). Moreover, citizenship, for purposes of proving an exception to CAFA, must be shown on the date the complaint was filed. *Preston I*, 485 F.3d at 798 *citing* 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed

---

[9] "In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship." *Preston I*, 485 F.3d at 797 *citing Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954). Residence alone is not the equivalent of domicile. *Preston II*, 485 F.3d at 815 *citing Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974). Evidence of a person's place of residence, however, is *prima facie* proof of his domicile. *Preston I*, 485 F.3d at 799 *citing Stine*, 213 F.2d at 448). Furthermore, once established, "[a] person's state of domicile presumptively continues unless rebutted with sufficient evidence of change." *Preston I*, 485 F.3d at 798. In this case, the plaintiff purportedly presents citizenship information received from the defendants which was presumably derived from residential addresses. In the absence of any evidence that any purported plaintiff's citizenship or residence has changed, the court will not inquire further into the domicile of any particular plaintiff.

plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint. . . .").  Thus, DeHart must show that greater than two-thirds of the putative class members were citizens of Louisiana on January 23, 2009, the filing date of this purported class action lawsuit.

Here, the sole proof of citizenship presented by plaintiff is a document entitled "Citizenship of the POBS Taken from Information Provided by Defendants." [rec. doc. 15-4].  The document was attached to plaintiff's original Motion to Remand.  Following the defendant's objection to the document as unsubstantiated and inaccurate, plaintiff submitted the Unsworn Declaration of paralegal Michelle LaMark, wherein LaMark states that she compiled the document from POB (Persons on Board) documents for the L/B DIXIE PATRIOT for March and April 2007 and the defendants' discovery responses, and that the compilation was "true and correct to the best of [her] information, knowledge and belief." [rec. doc. 67-8].  The document lists 111 people who purportedly worked on the L/B DIXIE PATRIOT.  Of these, plaintiff lists 44 as Louisiana citizens, 2 Texas citizens, 3 Mississippi citizens, 2 possible citizens of Louisiana, and 1 possible citizen of Texas or Louisiana.  The remaining 59 persons have no citizenship identified.

At the hearing on the instant Motion, plaintiff's counsel offered another compilation.  This compilation differs from the original as follows.  The document lists only 109 persons (Joseph Glen Johnson and Fred Cart are not listed).  Of those previously listed as Louisiana citizens, 9 are listed as citizens of Florida, Alabama, Texas,

Mississippi and/or Missouri (Jim Ritter, James Carter, Larry Palmer, Leshon Hood, William Mark Gunn, Don Taylor, Lyman Greg Wood, James Perry, Steve Sadich), while others are deemed Louisiana citizens (Rene Madere, Mike Brown), for a total number of 35 Louisiana citizens (and one listed as a possible Louisiana or Texas citizen). Of the 109 persons, 60 have no citizenship identified.

This revised compilation was not offered into evidence or attached as an exhibit to the Motion or plaintiff's Reply. However, plaintiff's counsel argued that this court should rely on the percentage of Louisiana citizens presented in this compilation (72.9%) and requested that the court use this data to extrapolate the citizenship of those persons whose citizenship had not yet been discovered.

The defendants contested the plaintiff's compilation as inaccurate. Given the conflicting documents, that argument is persuasive. However, this court need not reach the issue because, even accepting plaintiff's compilations, it appears that plaintiff has not satisfied his burden of demonstrating that two-thirds of the entire plaintiff's class were Louisiana citizens on the date the instant suit was filed, January 23, 2009. To the contrary, the majority of the persons listed in plaintiff's original and supplemental documents have no citizenship identified. Plaintiff argues that of the potential plaintiffs whose citizenship he has discovered, 72.9 percent are Louisiana citizens. However, it appears that plaintiff has failed to provide this court with sufficient evidence for this court to reasonably conclude that of the total number of purported plaintiffs, be it 130 alleged in

the Petition, 118 as estimated by plaintiff's counsel during oral argument, 111 listed in the original compilation, or 109 in the supplemental compilation, that two-thirds of those persons are Louisiana citizens, much less that they were, or remained, Louisiana citizens on January 23, 2009, the date this suit was filed.

At best, plaintiff has shown that slightly more than one third and less than half  (35 of 109, or 44 of 111) of the purported plaintiff class were Louisiana citizens at the time they were aboard the L/B DIXIE PATRIOT in March and April 2007. Furthermore, unlike the *Bennett* case cited by plaintiff, the class description in plaintiff's Petition provides no support from which a reasonable inference of Louisiana citizenship may be made.  The class is not described as compromised of Louisiana residents, but rather consists of seamen and offshore workers employed by numerous in-state and out-of-state companies. *See Bennett v. Board of Commissioners for East Jefferson Levee District*, 2007 WL 2571942, *4-5 (E.D. La. 2007) *citing Caruso*, 469 F.Supp.2d at 367.

While the Fifth Circuit has acknowledged that at this threshold stage of the case, the district court need not engage in the arduous task of examining the domicile of every proposed class member before ruling on the citizenship requirement, the Court must nevertheless be presented with competent and reliable evidence from which a credible estimate may be made.  *Preston II*, 485 F.3d at 816; *Preston I*, 485 F.3d at 802-803.  The

evidence presented by plaintiff herein is clearly insufficient.[10]

Even if the plaintiff had established the requisite two-thirds citizenship, plaintiff has nevertheless failed to demonstrate that the principal injuries resulting from the defendant's alleged conduct occurred in Louisiana.  The plaintiffs' alleged injuries did not occur within the State of Louisiana. To the contrary, the  alleged injuries occurred while the plaintiffs were working on the Outer Continental Shelf, which is defined by the OCSLA as all those submerged lands three or more geographical miles from the United States coastline, "and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control." *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 109 S.Ct. 278 (1988) *citing* 43 U.S.C. § 1331 and § 1301.[11]

The OCSLA further provides that "the subsoil and seabed of the Outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition . . . ." 43 U.S.C. § 1332.  It is thus well settled that the OCS is under the

---

[10]Plaintiff's counsel's suggestion that the defendants are  in possession of information bearing on the citizenship of the putative class is unavailing. Both the Fifth Circuit in *Frazier* and the Eleventh Circuit in *Evans*, noted that the plaintiffs were better positioned to produce the information necessary to carry the burden of proving the exceptions to the CAFA. *Frazier*, 455 F.3d at 546 ("This result is supported by the reality that plaintiffs are better positioned than defendants to carry this burden."); *Evans*, 449 F.3d at 1164 n. 3 ("Moreover, placing the burden of proof on the plaintiff in this situation is not only consistent with the statutory design, we believe it places the burden on the party most capable of bearing it.").  Moreover, even if this Court were to assume that plaintiff was not in a better position to produce such information, he has had months to conduct discovery and to compel production of this evidence.

[11]The OCS includes "all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in section 1301 of this title." 43 U.S.C. §1331. "[L]ands beneath navigable waters" include all submerged lands within three geographical miles of the coastline of the United States. 43 U.S.C. §1301.

exclusive jurisdiction and control of the Federal Government.[12]  Accordingly, this case arises out of injuries allegedly sustained in an area of exclusive federal jurisdiction, not in Louisiana, as is required to make this case a "local controversy" as contemplated by CAFA.

Furthermore, plaintiff's suggestion that the alleged application of Louisiana law in this case somehow changes the situs of the plaintiff's alleged injuries to Louisiana, is unavailing.  This is so because although the OCS is subject to the exclusive jurisdiction and control of the Federal Government, Congress was also faced with the problem of which civil and criminal laws should govern activity on OCS sites.   *Shell Oil*, 488 U.S. at 27.  The OCSLA therefore provides that Constitution and the laws of the United States are extended to cover the OCS. *Id.* at *citing* 43 U.S.C. § 1333(a)(2)(A). Congress recognized, however, that "because of its interstitial nature, federal law would not provide a sufficiently detailed legal framework to govern life on 'the miraculous structures which will rise from the sea bed of the [OCS].'" *Id., citing* Christopher, "The Outer Continental

---

[12]The background and legislative history of the OCSLA confirm that OCSLA grew out of a dispute, which first developed in the 1930's, between the adjacent States and the Federal Government over territorial jurisdiction and ownership of the OCS and, particularly, the right to lease the submerged lands for oil and gas exploration. *Shell Oil*, 488 U.S. at 26 *citing*  S.Rep. No. 133, 83d Cong., 1st Sess., 21 (1953), U.S. Code Cong. & Admin. News 1953, p. 1385. The adjacent States claimed jurisdiction over the submerged lands and their rich oil, gas, and mineral deposits, and some had even extended their territorial boundaries as far as the outer edge of the OCS. *Id.* citing S.Rep. No. 133 at 6 and 11.  After the United States Supreme Court, in a series of opinions, ruled that the Federal Government, and not the adjacent States, had exclusive jurisdiction over the OCS, Congress, in 1953, passed the OCSLA.  *Id.* at 26-27 *citing  United States v. Louisiana*, 339 U.S. 699, 705, 70 S.Ct. 914, 917, 94 L.Ed. 1216 (1950), *United States v. Texas*, 339 U.S. 707, 717-718, 70 S.Ct. 918, 923-924, 94 L.Ed. 1221 (1950), and  *United States v. California*, 332 U.S. 19, 38-39, 67 S.Ct. 1658, 1668-1669, 91 L.Ed. 1889 (1947).

Shelf Lands Act: Key to a New Frontier", 6 Stan.L.Rev. 23, 37 (1953).  In resolving this issue, the OCSLA provides for the incorporation of the civil and criminal laws of the adjacent States to act as surrogate federal law. *Id*. *citing* 43 U.S.C. § 1333(a)(2)(A).[13] The applicable law in this exclusively federal jurisdiction is therefore federal law.

Finally, plaintiff has failed to demonstrate that during the past three years, no other class action has been filed against any of the defendants asserting the same or similar factual allegations, on behalf of the same or other persons. § 1332(d)(4)(A)(ii).  The instant action was filed in state court on January 23, 2009.  This court's records demonstrate that on December 20, 2007 George Larry Myers filed a purported class action lawsuit, in another state court, on behalf of crew members and offshore workers aboard the L/B DIXIE PATRIOT, covering the same time period alleged in this case, against BP, PMI Crown and Brand, all of whom are defendants herein.  That lawsuit seeks recovery of damages for exposure to radiation, asserting similar factual allegations as those alleged in the present action.  That action was removed and remains pending in this court.  *Myers v. BP America, Inc., et al*, 6:08-0168 (W.D. La.).

While the undersigned was initially concerned that because Myers and DeHart are members of the same class that their individual actions could be viewed as a single case,

---

[13] Section 1333(a)(2)(A) provides in pertinent part: "To the extent that they are applicable and not inconsistent with this subchapter or with other federal laws and regulations of the Secretary now in effect or hereinafter adopted, the civil and criminal laws of each state, now in effect or hereinafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf . . . ."

on further consideration, the undersigned finds that in light of the express statutory language, and further based on the reasoning of Judge Vance in the *Caruso* case, this concern is not valid. The statute expressly prohibits the filing of multiple class actions by different members of the same class.  Indeed, one of the reasons Congress passed CAFA was to protect defendants from this type of activity, where different class members file separate class action lawsuits in varying jurisdictions, by providing a singular federal forum. *See* S.Rep.NO.109-14 at 4-5 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 5-6 (noting that "[m]ultiple class action cases purporting to assert the same claims on behalf of the same people often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity" as one of the abuses which CAFA was intended to address by "creat[ing] efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court . . . .").  For this court to remand this action to state court, despite the fact that the *Myers* case remains pending in this court, would thwart that Congressional objective.

Because neither the third nor fourth elements of the local controversy exception are satisfied, the "local controversy" exception is not applicable and remand on the basis of that exception is not warranted.

**Home State Exception**

Pursuant to the "home state" exception, a district court "shall" decline to exercise its jurisdiction over class actions in which "two-thirds or more of the members of all

proposed plaintiff classes in the aggregate, and *the primary defendants* are citizens of the

State in which the action was originally filed." 28 U.S.C.A. § 1332(d)(4)(B) (emphasis

added).  Under this exception, *all* primary defendants must be citizens of the state in

which the action was originally filed (Louisiana). *Raspberry v. Capitol Country Mut. Fire

Ins. Co.*, 609 F.Supp.2d 594, 606 (E.D. Tex. 2009) *citing Robinson v. Cheetah Transp*.,

2006 WL 3322580 (W.D. La. 2006).  As correctly noted by Magistrate Judge Hayes, "this

is evident from the statute's use of the phrase "*the* primary defendants" rather than "*a*

primary defendant."  *Robinson*, 2006 WL 3322580 at *3 (emphasis in original).

The provisions of CAFA do not define the term "primary defendants" and there is

very little case law addressing the issue.  However, Magistrate Judge Hayes relied on the

Senate Report on CAFA in reaching what the undersigned agrees is the operative

definition, stating the following:

> ". . . the Committee intends that 'primary defendants' be interpreted to
> reach those defendants who are the real "targets" of the lawsuit-i.e., the
> defendants that would be expected to incur most of the loss if liability is
> found. Thus, the term "primary defendants" should include any person who
> has substantial exposure to significant portions of the proposed class in the
> action, particularly any defendant that is allegedly liable to the vast majority
> of the members of the proposed classes (as opposed to simply a few
> individual class members)."

*Robinson*, 2006 WL 3322580, *2-3 *quoting* 3 S.Rep. No. 109-14, at 43-44 (2005).

Judge Vance of the Eastern District relied on the dictionary definition, opining that

"'primary' includes 'first importance; chief; principal; [and] main'" defendants.  *Caruso*,

469 F.Supp.2d at 369.   Other courts have held that the term "primary defendant" includes

any defendant against whom direct liability is sought and, therefore, excludes a defendant whose liability is based on vicarious liability, indemnification, or contribution. *Robinson*, 2006 WL 3322580, *3 .  (citations omitted).

Under any of these definitions, it is clear that BP, an alleged foreign corporation, is a "primary defendant."  BP is the alleged owner of the platform which was being decommissioned, the alleged charterer and supervisor of the L/B DIXIE PATRIOT, the alleged "Jones Act employer of petitioner and many members of the class" and the alleged "controller of the L/B DIXIE PATRIOT, of the two supply vessels, and of the work areas whereupon petitioner and members of the class sustained injury." [rec. doc. 1-1, ¶ 3, 5-7].  Indeed, during oral argument, while declining to concede BP is a "primary" defendant, plaintiff's counsel nevertheless conceded that BP is a "principal" defendant in that "at the end of the day I expect them to pay us some money."

Because BP is a "primary" defendant in this class action lawsuit, the "home state" exception does not apply.  Remand on the basis of this exception is therefore not warranted.

Based on the foregoing, this court has jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  Further, because the plaintiff has not carried his burden of demonstrating an exception to this Court's jurisdiction under CAFA, this court therefore may not decline federal jurisdiction. The Court will therefore not reach the alternate ground for jurisdiction alleged by the

defendants under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq*.

## CONCLUSION

Based on the foregoing, the undersigned concludes that, for purposes of remand, the plaintiff, John Paul DeHart, Jr., is not a Jones Act seaman. Hence, there is no bar to removal of this action under the Jones Act.  Moreover, this court has jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Accordingly, the Motion to Remand is **DENIED.**  It is further ordered that plaintiff's request for costs, expenses and attorney's fees is **DENIED.**

Signed , January 14, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
**UNITED STATES MAGISTRATE JUDGE**